

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-15-2008

# USA v. Fallon

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2350

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Fallon" (2008). *2008 Decisions*. Paper 365.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/365

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-2350

_____

UNITED STATES OF AMERICA

v.

JAMES C. FALLON,
                                                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 02-cr-00324
(Honorable James T. Giles)

_____

Argued September 9, 2008
Before:  SCIRICA, *Chief Judge*, McKEE and SMITH, *Circuit Judges*.

Filed: October 15, 2008

ROBERT EPSTEIN, ESQUIRE (ARGUED)
Defender Association of Philadelphia
Federal Court Division
The Curtis Center, Suite 540 West
601 Walnut Street
Philadelphia, Pennsylvania 19106
        Attorney for Appellant

BERNADETTE A. McKEON, ESQUIRE (ARGUED)
CHRISTINE E. SYKES, ESQUIRE
ROBERT A. ZAUZMER, ESQUIRE
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106
        Attorney for Appellee

SCIRICA, *Chief Judge*.

Appellant James C. Fallon was convicted by a jury of one count of wire fraud and three counts of mail fraud. In addition to a prison sentence of twelve months and a day (followed by thirty-six months of probation), Fallon was ordered to pay restitution in the amount of $55,235.86. On appeal, we affirmed Fallon's conviction and sentence, but vacated the District Court's restitution order. *United States v. Fallon*, 470 F.3d 542 (3d Cir. 2006). On remand, the District Court imposed an amended restitution order in the amount of $57,437.80. Fallon now appeals the Court's restitution calculation. For the following reasons, we will affirm.

I.

Fallon is the former president of Derma Genesis, the manufacturer and distributor of "Derma Peel," a dermatological device. On November 4, 1997, the Food and Drug Administration ("FDA") notified Fallon he could not legally market Derma Peel without first obtaining clearance from the agency. Nevertheless, in January 1998, Fallon began promoting Derma Peel without FDA clearance. Soon after, Fallon began negotiations with a medical device financier, American Business Leasing, ("ABL") to purchase the devices. To secure an agreement, Fallon fraudulently submitted a forged letter to ABL

which claimed to provide FDA approval for distribution of Derma Peel. This letter formed the evidentiary basis of the government's successful prosecution of Fallon.

Relying upon the forged letter, ABL purchased seventy-eight Derma Peel machines from Fallon for lease to medical professionals.[1] ABL became aware of Fallon's fraud in September 1998, and shortly thereafter ended its relationship with Derma Genesis. Fallon was indicted in 2002 and the District Court entered the judgment of conviction and sentence on October 16, 2003. Fallon appealed his sentence and we vacated the restitution amount and remanded back to the District Court. After the amended restitution order was imposed, Fallon again appealed the judgment, disputing the method of calculation used by the District Court.

On appeal, we consider the District Court's amended restitution order.[2]

---

[1]On February 18, 1998, shortly after Fallon submitted the fabricated letter to ABL, the passage of the Food and Drug Modernization Act exempted Derma Peel from the FDA's clearance requirement. Though Fallon could now legally market Derma Peel without FDA clearance, the District Court found Fallon's representation of FDA approval remained material to ABL's decision to purchase the device. Furthermore, the District Court found it was material to certain doctors' decisions to lease the device from ABL.

[2]"We review a restitution order under a bifurcated standard: plenary review as to whether restitution is permitted by law, and abuse of discretion as to the appropriateness of the particular award." *United States v. Quillen*, 335 F.3d 219, 221 (3d Cir. 2003). (internal quotations omitted). A district court's factual finding regarding the amount of loss is reviewed for clear error. *United States v. Vitillo*, 490 F.3d 314, 330 (3d Cir. 2007).

II.

The District Court did not err in confining the restitution calculation to the four unenforced lease agreements. Fallon contends the District Court should have aggregated ABL's profits and losses from all of the leases to determine the restitution amount. Under Fallon's approach, there would be no restitution award as it is undisputed ABL generated a net profit from the leases. However, under the Mandatory Victims Restitution Act ("MVRA"), a defendant is required to pay restitution to a victim for losses proximately caused by the defendant's unlawful conduct. 18 U.S.C. § 3663(a)(1)(A). In *Fallon*, we instructed that "where . . . the government demonstrates that a business transaction was consummated due to fraud by the defendant, a commonsense but rebuttable inference arises that subsequent losses suffered by the victim of the fraud are sufficiently linked to the underlying fraud to support an award of restitution." 470 F.3d at 549.

On remand, as directed, the District Court correctly focused just on those leases which the government demonstrated were proximately caused by the defendant's unlawful conduct *and* for which the defendant did not provide evidence to rebut the inference in favor of the prosecution.[3] Because Fallon failed to demonstrate there was an

---

[3]The defendant provided evidence to rebut the proximate causation inference for the other leases in the first sentencing hearing. *See Fallon*, 470 F.3d at 549. ("As noted, approximately $34,000 of the District Court's $55,235.86 restitution judgment can be attributed to lease payments missed by two doctors, one dead and one who filed for bankruptcy.") *See also United States v. Fallon*, No. 02-324-1, 2007 U.S. Dist. LEXIS 32986, at *4 (E.D. Pa. May 3, 2007). ("Only lease agreements as to the three entities are

(continued...)

4

intervening cause for these losses other than his fraud, the District Court was correct in only including the four leases in the restitution award.[4]

A.

The District Court did not abuse its discretion in finding ABL made a reasonable business decision not to enforce its financing agreement. Fallon argues ABL could have enforced the outstanding lease agreements, mitigating their losses. But the District Court credited the testimony of ABL's attorney that he advised the company it could face allegations of fraudulent inducement if it attempted to enforce the lease agreements for Derma Peel. Accordingly, ABL decided not to attempt to enforce the outstanding leases because ABL's contractual relationship with its customers included a duty of good faith and fair dealing.[5]  *See, e.g., DiCarlo v. St. Mary Hosp.*, No. 05-1665, 2006 U.S. Dist.

---

[3](...continued)
now at issue. . . . As to each of the four devices at issue, Defendant has presented no evidence or testimony from any of the contracting parties that the devices were returned for reasons other than the misrepresentation regarding FDA approval.")

[4]The District Court's restitution calculation is as follows:  the government presented unrefuted evidence that ABL was unable to collect $24,743.64 from the Cosmetic Laser Center, $42,646.10 on two leases from Dr. Griffin, and $48.06 from the Plastic Surgery Center.  The total losses were found to be $67,437.80. The court then offset the restitution amount by $2,500, the residual value of each of the four machines after the leases were terminated and the machine was returned to ABL, as stipulated in the contract.  The total restitution amount is therefore $57,437.80.

[5]Fallon claims he should not be responsible for the resulting losses because it was possible for ABL to enforce the outstanding lease agreements against the doctors. Fallon's argument is three-fold: (1) ABL's lease agreements contained a so-called "hell or
(continued...)

LEXIS 49000, at *20, (D.N.J. July 19, 2006), *adopted by DiCarlo v. St. Mary Hosp.,* 530 F.3d 255, 260 (3d Cir. 2008) ("A plaintiff may be entitled to relief under the covenant [of good faith and fair dealing] if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose." (citation omitted)). Having discovered its customers may have been fraudulently induced to purchase Derma Peel machines, ABL acted in accord with its duties in declining to enforce the outstanding leases.[6]

B.

The District Court did not err by deducting only the default residual value of Derma Peel machines from the restitution award. Fallon argues the Court should have

---

[5](...continued)
high water" provision, which protected ABL from liability (the lease stated ABL did not ensure the quality of the products it financed), (2) ABL did not engage in fraudulent conduct because the device was exempted from the FDA's clearance requirement before it was purchased by ABL, and (3) ABL did not make its fraudulent representations knowingly. We find these arguments to be without merit. To compel a company to pursue litigation to enforce an agreement which it suspects was fraudulently entered into is unreasonable and not a recognizable legal duty.

[6]Initially we stated, "Whether the doctors may have had colorable fraudulent inducement claims is far from certain." *Fallon*, 470 F.3d at 550. Nevertheless, given the presumption that Fallon was the proximate cause of ABL's losses, Fallon still has the burden of proving ABL was unreasonable in failing to enforce the outstanding leases. Fallon did not meet this burden. ABL presented unrefuted evidence at least one doctor threatened to take legal action against ABL for fraudulently inducing the lease agreement if ABL attempted to enforce the Derma Peel lease agreement. Fallon wishes this Court to require ABL to litigate each claim, a costly, impractical, and unpredictable demand. Even if, as Fallon predicts, ABL's lease agreements were legally enforceable, it would be improper and overreaching to require a fraud victim to pursue every possible avenue to mitigate the costs of the crime perpetrated upon them.

6

deducted the residual value of the devices at the time ABL stopped enforcing the lease agreements. Under the MVRA, the value of property at the time it is returned to the victim must be deducted from the restitution award. 18 U.S.C. § 3663(b)(I)(B)(ii). Fallon argues ABL should have sought to have the machines returned immediately so they could be resold or leased. Fallon claims machines returned before their lease agreements were set to expire had a higher residual value than $2,500 because they had been used fewer times than expected, and this extra value should be deducted from the restitution amount. The District Court disagreed and credited Fallon for the default minimal residual value of the four machines as stipulated in the contract ($2,500 each).

As noted, Fallon has the burden of refuting the presumption that ABL's losses were due to his fraud. *Fallon*, 470 F.3d at 549. To satisfy this burden, he would have to establish that if the Derma Peel machines were returned to ABL, they could have been resold or released at a value higher than $2,500. In other words, he would need to show ABL could have mitigated its losses, but did not.

Fallon did not meet this burden. The District Court credited the testimony of a prosecution witness, FDA Special Agent Douglas Loveland, who stated the devices would have been returned to the device distributors who worked for Fallon, rather than to ABL. Fallon presented no evidence indicating the machines were returned to ABL rather than the distributor, or even that ABL would have been able to resell or release the machines for more than $2,500 to recover some of its lost profits. The District Court

7

credited Fallon $2,500 for the minimal residual value of each machine as stipulated in the contract. This placed ABL in the position it would have been in had the contracts been fully performed. As such, we see no error in the District Court's findings.

Accordingly, we will affirm the restitution award as determined by the District Court.